# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Schneider's Dairy, Inc.,          :
           Petitioner         :
                                  :
           v.                  : No. 2358 C.D. 2015
                                  : Submitted: May 13, 2016
Workers' Compensation        :
Appeal Board (Dhans),          :
           Respondent       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: August 25, 2016

      Schneider's Dairy, Inc. (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted compensation benefits to Joseph Dhans (Claimant) for injuries to his back. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) to expand the list of Claimant's recognized work injuries and to deny Employer's termination petition with respect to the newly recognized work injuries. On appeal, Employer argues that the WCJ failed to issue a sufficiently reasoned decision. Finding no merit to this contention, we affirm the Board's adjudication.

      Claimant filed a claim petition under the Workers' Compensation Act (Act)[1] asserting that on December 16, 2011, he sustained an injury while working for Employer as a machine operator. Specifically, while pulling a pallet filled with

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

stacks of bottles from a tractor trailer, Claimant fell out of the trailer, hitting his back on the blades of a forklift and landing on his left leg. Claimant fell approximately four feet onto concrete. Claimant reported the accident to his supervisor, Terry Linderman. Later that evening, Claimant went to the emergency room because of pain in his left knee and numbness in his foot. On December 19, 2011, Employer sent Claimant to Concentra Medical Center for treatment to his knee. Subsequently, he was referred to Sam Akhavan, M.D., at Allegheny General Hospital, for treatment.

On January 10, 2012, Employer issued a notice of temporary compensation payable, describing Claimant's injury as a lower left leg strain.[2] On February 15, 2012, Claimant underwent knee surgery. Thereafter, Claimant began to experience pain in his lower back, leg and foot, as well as cramping in his calf and numbness in his foot. Claimant was referred to Edward D. Snell, M.D., for treatment.

On September 29, 2012, Claimant filed a petition for penalties, alleging that Employer failed to pay him partial disability benefits when due. Claimant also filed a petition for review of compensation benefits seeking to have the description of the work injury amended to include a torn meniscus of the left knee with bone bruise and two herniated discs in the lumbar spine.[3] Employer

---

[2] On or about March 28, 2012, the notice of temporary compensation payable was converted to a notice of compensation payable (NCP) by operation of law.

[3] During the course of the hearings, Claimant amended the penalty petition to include an allegation that Employer failed to document his disability status. Claimant also amended the review petition to allege that the description of the injury was a lumbosacral radiculopathy and a left chondral lesion of the medial femoral chondyle of the left knee. Claimant deleted the allegations in the review petition that the description of the injury should include a torn meniscus with bone bruise and two herniated discs in the lumbar spine.

2

filed an answer denying the allegations of Claimant's petition. On November 27, 2012, Employer filed a termination petition in which it alleged that Claimant had fully recovered from his work injury, *i.e.,* a lower left leg strain, as of October 3, 2012. The matter was assigned to a WCJ.

Before the WCJ, Claimant testified that, on December 16, 2011, he fell backwards out of a tractor trailer, hitting forklift blades with his right side and middle back and landing on the pavement with his left leg. Notes of Testimony (N.T.), 12/3/2012, at 17; Reproduced Record at 24 (R.R. ___). The fall caused significant pain in his knee and numbness in his foot. After surgery on February 15, 2012, Claimant experienced increased pain in his lower back and foot numbness. Nevertheless, he returned to light duty work on April 19, 2012, and began to collect partial disability. Claimant explained that initially he had so much pain in his knee that he did not recognize the numbness in his foot. N.T., 4/19/2013, at 19; R.R. 83. Claimant continues to experience pain in his lower back, cramping in his calf and numbness in his foot.

In support of his review petition, Claimant offered the deposition testimony of Dr. Snell, who is board certified in family practice and holds a certificate of special qualification in sports medicine. Dr. Snell testified that he started treating Claimant on May 1, 2012, for numbness and tingling in his foot as well as pain in his left leg. Dr. Snell found weakness in Claimant's leg. Initially, based upon what Claimant told him and his examination of Claimant, Dr. Snell suspected that Claimant had suffered a disc herniation, a fractured spine or a hyper-extended knee. He prescribed steroids to calm the nerve and physical therapy, and ordered an MRI of Claimant's back. The MRI showed that Claimant

3

had a disc bulge or herniation which was putting pressure on his nerve.[4] Dr. Snell recognized Claimant's degenerative changes in his back, but he opined that the work accident caused Claimant's symptoms because Claimant had not experienced these symptoms prior to the fall.

When the physical therapy and steroids did not help Claimant, Dr. Snell referred Claimant to Dr. Mark Fye, a back surgeon, who did not think surgery was an option. Dr. Snell then referred Claimant to Dr. Don Whiting for a second opinion. Dr. Whiting agreed that surgery was not an option and recommended that Dr. Snell check Claimant's nerve conduction. This study showed that Claimant had "radiculopathy that [was] chronic in his left-sided distribution." N.T., 5/10/2013, at 17; R.R. 179. Dr. Snell opined that Claimant's work injury consisted of a disc bulge or herniation at L4-L5 and post-traumatic osteoarthritis in his knee.

Dr. Snell testified that he reviewed the Independent Medical Examination (IME) report of Jon A. Levy, M.D., who concluded that Claimant's low back pain was a degenerative condition that was unrelated to the work injury. Dr. Snell stated that he did not agree with Dr. Levy's opinion, noting, *inter alia,* that Claimant reported pain going down his leg to the emergency room physician he saw the evening of the accident. Dr. Snell believed Claimant's leg pain was directly related to falling on his back.

In support of its termination petition, Employer offered the deposition testimony of its shift production supervisor, Terry Linderman. He testified that Claimant stayed late on December 16, 2011, because there had been a call-off.

---

[4] Dr. Snell noted in Claimant's records that the MRI showed evidence of a central paracentral disc protrusion at the L4-L5 levels. Claimant's Exhibit 6.

4

Linderman testified that Claimant told him he fell off the back of a trailer while pulling out a pallet of bottles, but Linderman did not witness the incident. Linderman recalled Claimant reporting pain in his leg but not in his back. Linderman testified that Claimant did not report back pain until he returned to work sometime in April or May 2012.

Employer also offered the testimony of Joseph Noro, its Plant Safety Manager, who testified that when Claimant returned to work after his knee surgery, Claimant complained of back pain. Noro asked Claimant when this pain started, to which Claimant responded, "Well, I thought my knee was causing me the problem, but my back hurts me." N.T., 3/13/2013, at 5; R.R. 146.

Finally, Employer offered the deposition testimony of Dr. Levy, its IME physician, who is a board certified orthopedic surgeon. Dr. Levy concluded that Claimant had "preexistent lumbar degenerative disc disease, left knee degenerative joint disease, and sustained a work-related left-knee sprain/contusion." N.T., 8/5/2013, at 16-17; R.R. 232-33. Dr. Levy opined that Claimant was fully recovered from the knee sprain and contusion he sustained in his fall at work. Dr. Levy explained that Claimant's low back injury was not work-related:

> First of all, this gentleman, following the injury, his injury occurred in December of 2011. There was not any documented complaints of [b]ack pain whatsoever until May 1 of 2012. So, essentially, for a number of months he had no complaints of back pain. This gentleman was on crutches for a number of weeks referable to his knee, and he was on protected weight bearing, not allowed to put all of his weight on the left leg because of the knee injury.
>
> If someone has a back problem or a back injury, and they try to walk on crutches and one leg, they aggravate their back and will have back pain. It's hard to get in and out of a chair, hard to

5

move, hard to tolerate standing. Any form of changing in position is painful.

\* \* \*

Secondly, the biggest factor is he had no complaints for a period of five months.

And the other factor is, this gentleman told me he never had back problem[s] before in his life, and he's had three separate occasions at least that we know of that he was involved in motor vehicle accidents and sought medical care and treatment for his back.

So for all of those reasons, I believe that it's unrelated – his current complaints of back issues are unrelated to the trauma sustained in December of 2011.

*Id*. at 18-20; R.R. 234-36.

The WCJ held that Claimant met his burden of proving that the description of the injury of December 16, 2011, should be amended to include an injury to the articular cartilage of the left knee and a low back injury in the nature of a L4-L5 disc bulge or herniation.[5] Therefore, the WCJ amended the Notice of Compensation Payable (NCP) to include that description. Further, the WCJ held that Employer met its burden of proving that Claimant had fully recovered from the left knee portion of the work injury as of October 3, 2012, but Employer did not prove that Claimant had recovered from the low back portion of the work

---

[5] Under Section 413(a) of the Act, 77 P.S. §771, the WCJ may amend a Notice of Compensation Payable (NCP) if it is shown that the injury sustained in the original work incident is different or more expansive than that in the NCP. Further, the NCP can be amended if the claimant files a review petition and proves that another injury subsequently arose as a consequence of the original injury. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 581 (Pa. 2009). The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856 n.4 (Pa. Cmwlth. 2011).

6

injury.[6] Finally, regarding Claimant's penalty petition, the WCJ held that Claimant met his burden of proving Employer violated the Act by failing to make timely payments of partial disability benefits. The WCJ assessed a 10% penalty, noting that not all of Employer's payments were delayed and that the delays were not egregious.[7] The Board affirmed the WCJ's decision.

On appeal,[8] Employer raises three issues. First, it contends that the Board erred in holding that "L4-L5 bulge or herniation" presents a clear description of Claimant's work injury. Second, it contends that the Board erred in holding that Dr. Snell provided a competent and unequivocal opinion. Third, it contends that the Board erred in holding that the WCJ did not need to reconcile the contradictions between the opinions of Dr. Snell and Claimant about his knee injury.[9]

Section 422(a) of the Act requires a WCJ to issue a reasoned decision that "clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834.[10] A

---

[6] An employer seeking to terminate workers' compensation benefits must show that the claimant's disability ceased or that any remaining disability arises from a cause unrelated to the work injury. *Michel v. Workers' Compensation Appeal Board (U.S. Steel Corporation),* 966 A.2d 643, 645 n.1 (Pa. Cmwlth. 2009). The employer meets this burden when its medical expert unequivocally testifies the claimant is fully recovered, can return to work without restrictions, and there are no objective medical findings substantiating the claimant's complaints of pain or connecting them to the work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 705 A.2d 1290, 1293 (Pa. 1997).

[7] The WCJ awarded Claimant $952.55 on his penalty petition. WCJ Decision, 11/17/2014, at 15.

[8] We review Board decisions to determine whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n. 4 (Pa. Cmwlth. 2009).

[9] We have reorganized Employer's issues on appeal for purposes of this opinion.

[10] Section 422(a) provides, in relevant part, as follows:
**(Footnote continued on the next page . . . )**

WCJ's decision is reasoned when it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 828 A.2d 1043, 1052 (Pa. 2003). "Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 194 (Pa. Cmwlth. 2006). "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 194-95 (citing *Daniels*, 828 A.2d at 1053).

In its first issue, Employer contends that the WCJ's decision was not reasoned because it does not explain why Dr. Snell was credited over Dr. Levy. In addition, Employer argues that "L4-L5 bulge or herniation" is not a clear description of the work injury.

---

**(continued . . . )**

> *All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.* The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. *The adjudication shall provide the basis for meaningful appellate review.*

77 P.S. §834 (emphasis added).

The WCJ reviewed the evidence and discussed the rationale for each finding of fact and conclusion of law. Regarding the testimony of Claimant's expert, Dr. Snell, the WCJ found, in relevant part, that:

> f. Dr. Snell has seen [C]laimant several times since the initial visit. He testified that [C]laimant has complaints mostly of pain down his leg and to some extent of pain in his back. Dr. Snell noted that the pain down [C]laimant's left leg seems to be in a distribution consistent with L5.
>
> * * *
>
> j. When asked for his diagnoses, Dr. Snell testified that [C]laimant has an L4-5 disc bulge or herniation and post-traumatic osteoarthritis in his knee.
>
> * * *
>
> o. On cross-examination, Dr. Snell testified that whether you call [C]laimant's disc problem a bulge or herniation is a matter of semantics. He testified that a bulge can still cause pressure on a nerve and still cause pain. Dr. Snell testified that he believed that there is nerve irritation in this case, but he acknowledged that the MRI and the myelogram made no specific finding of nerve impingement.

WCJ's Decision, 11/17/2014, at 10-11. Further, the WCJ explained why he credited Dr. Snell's testimony and rejected that of Dr. Levy with respect to Claimant's back injury.[11] Specifically, the WCJ explained:

---

[11] The WCJ has sole authority over questions of credibility and evidentiary weight. *Watson v. Workers' Compensation Appeal Board (Special People in Northeast),* 949 A.2d 949, 953 (Pa. Cmwlth. 2008). A WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Co., Inc.),* 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "Section 422(a) of the Act[, 77 P.S. §834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Dorsey,* 893 A.2d at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.*

9

I base this determination at least on part of the fact that *[C]laimant reported left foot numbness at the hospital on the date of injury and during treatment shortly thereafter* and the fact that there is no evidence that he had ever reported such numbness to a medical provider before the date of injury. While Dr. Levy asserted that the anterior leg numbness reported in some of the early medical records would not be consistent with the later evidence of an L5 and/or S1 radiculopathy and would instead be related to the L4 nerve root, Dr. Levy ultimately acknowledged that the left foot numbness which [C]laimant reported in the emergency room on the date of injury could be related to a peroneal nerve irritation and that the L5 and S1 nerve roots both contribute to the peroneal nerve. Dr. Levy also relied in part on [C]laimant's pre-existing history of back pain[;] however, his history was so remote in time that I was not persuaded by this argument.

*Id.* at 14.

In sum, the WCJ offered objective reasons for rejecting the portions of Dr. Levy's opinions that conflicted with the opinions of Dr. Snell. This satisfies the reasoned decision requirement of Section 422(a) of the Act.

Employer also argues that Dr. Snell's testimony cannot be credited because a disc bulge is different than a disc herniation. In support, Employer directs this Court to *Williams v. Workers' Compensation Appeal Board (South Hills Health System)*, 877 A.2d 531 (Pa. Cmwlth. 2005), for the proposition that there is a distinction between a disc bulge and disc herniation.

In *Williams*, a claimant received benefits pursuant to a NCP that described her injury as a lumbosacral strain. In the course of a termination proceeding, the WCJ found that the claimant did not have a work-related disc herniation. Thereafter, the claimant filed a reinstatement petition alleging that her original work injury had worsened as a result of a disc herniation. However, in the termination proceeding, the WCJ rejected the claimant's assertion that her disc

10

problems were work-related. Accordingly, the WCJ's termination decision acted as estoppel with respect to claimant's reinstatement petition, and this Court affirmed on appeal.

Employer focuses on a passage in *Williams* that noted that the claimant did not prove a disc herniation but only a mild disc bulge consistent with the claimant's age. Employer reads this discussion as establishing, as a matter of law, that a disc herniation is not the same as a disc bulge and, thus, a NCP will be rejected as invalid if it does not specify one of the two. *Williams* did not so hold.

No one contends that a disc bulge and disc herniation are the same phenomena. The real point, as made by Dr. Snell, is that either a bulge or a herniation can cause symptoms that render a claimant unable to work. Dr. Snell explained as follows:

> I can tell you that you can put ten radiologists, neuroradiologists, in a room and five would call it a disc bulge and five would call it a disc herniation. It's semantics. They do the same thing.
>
> Disc herniation and disc bulge can do the exact same thing. It just has to do with the posterior longitudinal ligament, whether it's violated or not.

N.T., 5/10/2013, at 34; R.R. 196. It is undisputed that Claimant suffers from low back pain, cramping in his calf, and numbness in his foot, caused by a disc pressing on a nerve. Whether the source of the pressure is a disc bulge or herniation matters not. The WCJ was persuaded by Dr. Snell's testimony, and this was his prerogative as the factfinder. We reject Employer's argument that the WCJ's decision was not reasoned because the work injury was described as "disc bulge/herniation."

11

In its second issue, Employer argues that the WCJ erred in relying on Dr. Snell to establish a causal connection between the work accident and the back injury because his opinion was not competent. When reviewing medical testimony, "[t]he opinion of a medical expert must be viewed as a whole." *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 1997). "A medical expert's opinion is rendered incompetent only if it is based solely on inaccurate or false information." *Id*. "The fact that a medical expert does not have all of the claimant's medical information goes to the weight to be given to that individual's testimony, not its competency." *Id*.

In support of its challenge to Dr. Snell's competency, Employer focuses on Dr. Snell's initial diagnosis, where he noted that it was "possible" that Claimant "could have" a herniated disc, a fracture of the spine, or a stretch to the popliteal nerve behind the knee. Employer claims that Dr. Snell was equivocal. We disagree. These notes report on Dr. Snell's first examination of Claimant and review of his medical reports. After Claimant had more tests done, Dr. Snell concluded that Claimant had an L4-L5 disc bulge or herniation, which was putting pressure on the nerve roots. Viewing his opinion as a whole, as *DeGraw* requires, there is no basis to conclude that Dr. Snell's opinion was equivocal.

Moreover, although Dr. Snell may have been unaware of Claimant's prior low back pain, that fact goes to the weight to be given Dr. Snell's testimony, not its competency. In any case, Dr. Snell testified that learning of Claimant's prior low back pain did not change his opinion. It merely confirmed that Claimant's back was undergoing degenerative changes, a fact already known to him.

12

Employer also challenges Dr. Snell's competency for the stated reason that he did not have a clear understanding of how Claimant was injured. Claimant testified that while he was pulling a stack of bottles on a pallet from a tractor trailer, the pallet got stuck. In response, he pulled harder, which caused the hook to come out of the pallet and caused him to fall backwards from the trailer. The fall caused him to hit forklift blades and land on the pavement. Dr. Snell described the incident somewhat differently, *i.e.*, that Claimant was carrying some kind of crate that he tried to fling when it got caught. This pulled him out of the tractor, causing him to roll on the ground and hit several things before coming to a stop.

A medical expert's opinion will be viewed as a whole and "inaccurate information will not render the opinion incompetent unless it is depend[e]nt on those inaccuracies." *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008). Dr. Snell testified that he spoke with Claimant about the work injury, in addition to reviewing the medical reports. Although Dr. Snell's description of Claimant's work accident at his deposition did not match Claimant's description word-for-word, the discrepancies are minor. Dr. Snell's opinion was not dependent on whether Claimant fell and rolled from a truck or merely fell from a truck. In each account, Claimant hit objects and landed on pavement.

Finally, Employer challenges Dr. Snell's competency because he based his causation opinion on the temporal relationship between Claimant's reported symptoms and the work injury. Dr. Snell testified that Claimant complained of pain primarily radiating down his left leg and his back. Dr. Snell also reviewed a variety of medical reports. They confirmed that Claimant had not experienced back and leg pain before his fall at work and, thus, corroborate Dr.

Snell's conclusion that Claimant's particular symptoms were caused by the fall, and not by his pre-existing degenerative condition. We reject Employer's challenge to Dr. Snell's competency.

In its third issue, Employer contends that the WCJ erred because the testimony of Dr. Snell and Claimant are not consistent about the knee injury. Specifically, Dr. Snell opined that Claimant had ongoing knee issues, but Claimant testified that his knee was fully recovered.[12] The Board held that because Employer prevailed on the termination petition regarding the knee injury, it is not an aggrieved party and, thus, lacked standing to appeal this issue.

It is well settled that only a person "aggrieved" by a decision has standing to appeal a tribunal's order. Pa. R.A.P. 501;[13] Section 702 of the Administrative Agency Law, 2 Pa. C.S. §702.[14] *See also Almeida v. Workers' Compensation Appeal Board (Herman Goldner Co.)*, 844 A.2d 642, 644 (Pa. Cmwlth. 2004). Although the term "aggrieved" is not defined in the Administrative Agency Law, case law has established that one is "aggrieved" if he "(a) has a substantial interest in the subject-matter of the litigation; (b) the interest is direct; and (c) the interest is immediate and not a remote consequence." *Id.* "A

---

[12] In his deposition testimony, Dr. Snell testified that he diagnosed Claimant as having post-traumatic osteoarthritis in his knee, but agreed that based on the condition of Claimant's knee, he could return to work. Similarly, Claimant acknowledged that he was having no problems with his knee and that it felt like it did before the work incident. We disagree with Employer that this is a contradiction, as both Claimant and Dr. Snell agreed that, with regard to Claimant's knee, he was able to return to work.

[13] Pa. R.A.P. 501 provides, in relevant part: "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order ... may appeal therefrom."

[14] Section 702 provides, in relevant part: "Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom...." 2 Pa. C.S. §702.

party who has prevailed in a proceeding below is not an aggrieved party and, consequently, has no standing to appeal." *Id.* We agree with the Board that Employer was not aggrieved by any such conflict in the evidence because it prevailed on its termination petition with respect to the left knee portion of the injury. Thus, Employer lacked standing to appeal its final issue.

For the reasons discussed above, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Schneider's Dairy, Inc.,     :
     Petitioner   :
             :
   v.       : No. 2358 C.D. 2015
             :
Workers' Compensation    :
Appeal Board (Dhans),    :
     Respondent  :

## **O R D E R**

AND NOW, this 25th day of August, 2016, the order of the Workers' Compensation Appeal Board, dated October 28, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge